## BANK OF LIBERAL, Appellant, v. MARTIN ANDERSON, Respondent.

### Kansas City Court of Appeals, May 25, 1903.

1. **Fraudulent Conveyances: MORTGAGOR'S POSSESSION AND DISPOSAL: ATTACHMENT.** Where the mortgagor retains possession of the mortgaged property with an understanding that he may sell for the purpose of paying other than the mortgage debt, the conveyance is to his own use and consequently fraudulent; and on the evidence reviewed in the opinion it is *held* that such was the effect of an understanding between the mortgagee and the defendant mortgagor, and was sufficient to sustain an attachment by the plaintiff creditor.

2. **Appellate Practice: MOTION FOR NEW TRIAL: EXCEPTIONS.** A bill of exceptions recited that a record entry was made showing the motion for new trial had been overruled and exceptions duly taken. *Held,* a sufficient though unusual saving of exceptions to the overruling of the motion.

Appeal from Barton Circuit Court.—*Hon. H. C. Timmonds*, Judge.

REVERSED AND REMANDED *(with directions).*

*G. H. Walser* and *Thurman, Wray & Timmonds* for appellant.

(1) ' Under the undisputed facts, the chattel mortgage was a conveyance to the use of the grantor, fraudulent and void. It permitted the mortgagor to remain in possession and dispose of the mortgaged property and apply the proceeds to his own use and benefits instead of in the discharge of the debt secured by the mortgage. Reed v. Pellitier, 28 Mo. 173; Lodge v. Samuels, 50 Mo. 204; Weber v. Armstrong, 70 Mo. 217; Bullene v. Barrett, 87 Mo. 185; Hubbell v. Allen, 90 Mo. 574; Barton v. Sitlington, 128 Mo. 164; Bank v. Powers, 134 Mo. (l. c.) 445; Mfg. Co. v. Supply Co., 134 Mo. (l. c.) 550; State to use, etc., v. O'Neill, 151 Mo. (l. c.) 86; Bagley v. Horman, 91 Mo. App. (l. c.), 29; Com. Co. v. Hunter, 91 Mo. App. (l. c.), 338. (2) Every man is presumed to intend the natural and probable consequences of his acts intentionally committed. Dry Goods Co. v. Brown, 73 Mo. App. 245; Landis v. McDonald, 88 Mo. App. 335; State to use, etc., v. O'Neil, 151 Mo. (l. c.) 186; Com. Co. v. Hunter, 91 Mo. App. (l. c.) 338.

*Marton & Van Pool, Cole, Burnett & Moore* for respondent.

(1) Outside of the matter mentioned in paragraph 1, there is no question preserved by appellant for review in this case and nothing for the Court of Appeals to review, unless it be the record proper, and appellant makes no complaint as to the regularity and correctness of the record proper. No matters of exception are shown to have been preserved in a bill of exceptions. State v. Burdett, 145 Mo. 674; Critchfield v. Linville, 140 Mo. 191; State v. Clark, 147 Mo. 20; Clark v.

Hughes, 73 Mo. App. 633; Ross v. Railroad, 141 Mo. 390; State v. Craig, 79 Mo. App. 412; O'Mohumbro v. Emerson, 80 Mo. App. 313; Landgraf v. Pressed Brick Co., 80 Mo. App. 538; Crenshaw v. Ins. Co., 71 Mo. App. 42; State v. Grant, 144 Mo. 56; Harper v. Oil Co., 74 Mo. App. 644; Force v. VanPlatten, 149 Mo. 446; Patterson v. Gallemore, 79 Mo. App. 457; State v. Reverly, 145 Mo. 660. (2) The right to dispose of one's property for an honest purpose is not terminated by indebtedness, or insolvency, although such a disposition may, or does, have the effect of hindering or delaying creditors. Daugherty v. Cooper, 77 Mo. 528 (531); State v. Laurie, 1 Mo. App. 371; Bank v. Russey, 74 Mo. App. 651; Milling Co. v. Burns, 152 Mo. 350. Fraud must not be inferred from the mere fact that the vender is indebted at the time of the conveyance. Feder v. Abraham, 28 Mo. App. 454. A fraudulent attempt to hinder and delay creditors can not be inferred from the mere fact that a conveyance had that effect. State to use v. Estel, 6 Mo. App. 6; Hardwick v. Cox, 50 Mo. App. 509; Colbern v. Robinson, 80 Mo. 541; Schreeder v. Bobbitt, 108 Mo. 289; Alberger v. Bank, 123 Mo. 325; Hargadine v. Henderson, 97 Mo. 386; Banking Co. v. Costello, 45 Neb. 119; Beessneck v. Coehn, 7 N. Y. Sup. 620; 2 Century Digest, semi page 319, art. 233 (s); Burgin v. Birgin, 23 N. C. (1 Ired.) 453; Black Hills Mercantile Co. v. Gardiner, 5 S. D. 246, 58 N. W. 557; Sprague v. Gardiner, Id. 5 S. D. 256, 58 N. W. 559. See, also, Goodpen v. Locke, 56 Ark. 314. (3) The mere fact that the security given to secure a note is more than is necessary is, of itself, no indication of fraud. Colburn v. Robinson, 80 Mo. 541; Furth Co. v. May, 78 Mo. App. 323; Kiely v. Hickox, 70 Mo. App. 623; Kingman v. Cornell-Tibbetts Co., 150 Mo. 300.

ELLISON, J.—The plaintiff brought its action against defendant on a promissory note and sued out an attachment in aid. On a trial of the plea in abate-

ment the verdict was for defendant and the attachment was thereupon dissolved.

The principal cause of attachment alleged was that defendant had fraudulently conveyed his property so as to hinder and delay his creditors. The evidence showed that defendant was largely indebted. That he owed · the plaintiff and certain implement dealers doing business as Conrad Brothers, besides several other debts. The immediate or principal cause of the attachment, was a chattel mortgage given by defendant to the Conrads on September 8th, 1900, to secure six notes, aggregating $225, being the purchase price of two "McCormick Corn Binders." The notes were to fall due a few months apart in sums ranging from fifteen to forty-five dollars. The first for $15, was to become due in a few days from date, and the last, for $40, in two years thereafter. To secure these notes the defendant executed the chattel mortgage on all his personal property and growing crops, including nine head of horses, two milch cows, one heifer and one steer, four farm wagons, 125 acres of Kaffir corn, 75 acres of Indian corn, the two machines, to secure the payment of which the mortgage was given, and a variety of other farm property, in all aggregating, according to defendant's testimony, a value of between four and five thousand dollars. The mortgage provided that defendant might retain possession of the property, but any sale, disposal or depreciation thereof, should be cause of forfeiture.

The testimony given by Conrad and by defendant himself is all that need be considered in order to dispose of the case. It was substantially as follows: That defendant having bought one machine of the Conrads, in a few days concluded that he needed another in order to harvest his Kaffir corn. He went to one of the Conrads to make the purchase, but was informed that he must give a chattel mortgage; and he replied that he would give one on all his property. That in naming over the property, perhaps half in value of what he finally gave,

Conrad said that was sufficient, but defendant put it all in and Conrad accepted it. We will not attempt to set out all the evidence of these two parties, for it is sufficient to say of it, that it shows, beyond doubt, they had a verbal understanding that defendant might sell, at least a large part of the property and use it in the payment of debts due other creditors than Conrad, as well as otherwise for his own benefit. Conrad said on re-cross-examination by Mr. Thurman: "Q. What was going to be done with the Kaffir corn? A. He told me he was going to thresh it. Q. What was he going to do with it? A. Sell it. And he told me at that time, he said——. He mentioned some debts that he had to pay, and he said, 'I will come out all right in it.' Q. Was there anything said about the other corn, and what he was going to do with it? A. No, sir. Q. He was going to use it—thresh his Kaffir corn and pay it on his debts? A. That is the way I understood it. Q. It was not to be paid on your debt? A. Nothing said about that. Q. You understood that he was cutting this corn and going to pay it on his debts, 'so he come out all right?' A. Yes, sir. Q. You understood that at the time this mortgage was executed? A. Yes, sir; but understand that he wanted these notes in payments. Q. He wanted your notes in payments? A. Yes, sir. Q. They were put in payments? A. Yes, sir. Q. Run way long up until 1902? A. Yes, sir; two or three years. Q. There was nothing said about what he was going to do with the Indian corn? A. No, sir; I don't remember of his saying anything about any Indian corn; that is, about what he was going to do with it. Q. What did you expect him to do with the Indian corn? A. I expected him to do with it whatever he wanted to. I expected to let him take it and do what he pleased with it. As long as he met his obligations with me I didn't expect to touch it. Q. You expected to let him do just as he pleased with all the property that was mortgaged as long as he met his obligations

with you? A. Yes, sir. Q. That was the understanding between you and him? A. Yes, sir.''

He then said in answer to a question on re-direct examination by Mr. Cole: ''I didn't say I had any understanding with him. I say, this is my understanding, that I took the mortgage on that stuff to secure these notes; that he was to take the stock and crop and do the best he could with it towards meeting his debts. Q. Was there any understanding that he could dispose of any of this property without applying it on the debt? What I mean is, did you and him have any understanding that the property that was mortgaged to you could be sold by him? A. The corn. Q. Without accounting for it on the claim? A. The corn. He was to take that and dispose of it. Q. This growing corn in the field? A. Yes, sir.'' By the Court: ''Q. Do you mean Indian corn and Kaffir corn, too? A. Yes, sir. Q. He could sell that and dispose of it without applying on your debt? A. If he paid up the paper that he owed me. Q. If he had paid up all the paper, or the paper that was due? A. The paper that was due.''

The defendant testified: ''Q. I will ask you whether or not after the mortgage was executed, if there was any understanding, or any agreement, about how you should dispose of the property that was mortgaged? A. There was no agreement about how, but Henry (Conrad) said when I went home, 'Now you have got two machines, you have got good stock; go take care of that Kaffir corn and take care of that stock; thresh that Kaffir corn and pay me my money, and balance you can have for use on your place and do as you are a mind to about it.' '' He further said that he expected to thresh the Kaffir corn, sell it and pay Conrad's first note falling due and then the plaintiff's. He further said, in answer to a question of what he was going to do with the Indian corn: ''I would do, I reckon, like other farmers would: shuck it and crib it. Q. Selling it when you got ready, or did you intend to keep it? A.

Well, to keep and sell both, of course; keep it or sell it either, just as I saw proper. Q. Were you at that time using it, along about the first of September? A. I was feeding the stock with it, cows and horses. Q. You expected to gather it and sell it when you got ready, just like any other farmer? A. Yes, sir.''

The entire face of defendant's testimony shows that he expected to use the property, or portions of it, by sale for the purpose, not only of paying the Conrad debt as the notes fell due, but also his other debts. Now, when there is an understanding that the mortgagor who retains possession of the property may sell it, or portions of it, for the purpose of paying debts other than that named in the mortgage, it is a conveyance to his own use and consequently fraudulent. It is not for him and his chosen mortgagee to first encumber his property and then provide, verbally or otherwise how it may be used for other creditors. While he may prefer a creditor if he chooses, he must do so in some proper way, whereby such creditors and their rights and preferences may be known. In two cases in the St. Louis Court of Appeals, in opinions by Judge Bland, it is expressly ruled that an understanding that the mortgagor might sell the mortgaged property and apply the proceeds on the claims of his other creditors was a conveyance to his own use. Hardware Co. v. Riddle, 84 Mo. App. 276; Dry Goods Co. v. McLaughlin, 78 Mo. App. 578.

The plaintiff asked an instruction which peremptorily directed a verdict for plaintiff under the evidence which we have discussed. It should have been given.

2. But it is suggested that no exception was taken to the court's action in overruling the motion for new trial. The abstract shows that the bill of exceptions recited that the motion for new trial was overruled. The bill further recited that a record entry was made showing it to be overruled and that exceptions were duly taken. While this was rather unusual language to use

in a bill of exceptions, yet it makes the fact sufficiently appear in the bill.

The judgment is reversed and cause remanded with directions to enter judgment sustaining the attachment. The other judges concur.